### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| Roger Pennie, | |
| Plaintiff, | Case No. 3:19-cv-50120 |
| v. | Honorable Iain D. Johnston |
| City of Rockford, Illinois, and Timothy Campbell, | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

One of the first rules of writing is to know the audience. When courts enter orders, they can be writing for many different audiences: the parties, the attorneys, other courts, future courts and litigants, the public at large, governmental bodies, or maybe all of these. This opinion is written for a larger audience.

Considerable resources have been expended on this case already. Those resources include defense counsel's pretrial litigation, such as discovery and writing two thoroughly researched and well-crafted briefs. The Court has likewise expended considerable resources on this case. But all of those resources likely could have been saved if the City of Rockford Police Department had equipped its officers with body cameras in 2018.

This case may not have even been filed had the interaction between Officer Campbell and Roger Pennie been recorded with sound and video. And this case most certainly would have been resolved sooner with that type of evidence. But, as discussed in detail in this order, a genuine dispute of material fact exists as to what

was said during this interaction, requiring this case to go to trial: Pennie says one thing and Campbell says something else. The Court understands that the City of Rockford has recently equipped its officers with body cameras in late 2021 and early 2022. The Court hopes that this equipment will help eliminate unnecessary litigation in the future or at least hasten the conclusion of litigation.[1]

*    *    *

Plaintiff Roger Pennie brings this action *pro se* seeking recovery for what he argues was an unconstitutional seizure of his vehicle. He also asserts a state law claim of theft. Before the Court is the Defendants City of Rockford, Illinois, and Officer Timothy Campbell's motion for summary judgment.[2]

## A. Background

On the morning of January 10, 2018, Officer Campbell observed Pennie driving his SUV. Pennie had pulled over to make a phone call. But based on Officer Campbell's experience as a police officer, the fact that Pennie pulled over suddenly to the side of the road made Campbell think that Pennie might be driving without a

---

[1] The Court cannot take a position on the public policy implications of equipping police officers with body cameras. For example, the Court understands that, on the one hand, body cameras are expensive but, on the other hand, they can help instill trust between a community and a police department. Those are considerations best left to the political branches to weigh. The Court merely notes that body cameras have a salutary effect in litigation.

[2] Pennie challenged the impoundment of his vehicle through an administrative hearing. He then sought judicial review of that adverse decision and then appealed the adverse judicial review to the Illinois Appellate Court. That state proceeding, however, did not address Pennie's concerns under the Fourth Amendment. Indeed, the City of Rockford argued at the administrative hearing that it was not the proper forum for Pennie to raise his Fourth Amendment arguments, which the hearing officer agreed with. *Pennie v. City of Rockford*, 2018 IL App. (2d) 180411-U, ¶¶ 11-12; *but see Garcia v. Village of Mount Prospect*, 360 F.3d 630, 642 (7th Cir. 2004) (a Section 1983 claim can be joined to a claim for administrative review).

license. So, he checked the databases and learned that Pennie's license was suspended, confirming Campbell's suspicions. Before performing the search, Campbell had driven past Pennie to get a good look at him, so when he saw Pennie's photo in the database, he knew it was him and that he was driving on a suspended license. So, Campbell turned around and drove to relocate Pennie, whom he spotted nearby. Pennie had parked his car on the curb near a friend's house, and Officer Campbell pulled up behind him and activated his emergency lights. At this point, no reasonable person could fault Campbell's police work.

After Campbell exited his vehicle, Pennie identified himself and admitted to not having a valid license. Pennie was traveling with a passenger, but that individual also lacked a valid driver's license to take control of the vehicle. Because Pennie had been parked in front of a friend's house, however, he says that he called the friend and asked her to take control of the vehicle so that it would not need to be impounded. But critically for the issue before the Court, Campbell says he was not informed that anyone was available to take the vehicle. Dkt. 88-2, ¶¶ 40–41. So, to state the obvious, Pennie swears that he told Campbell that somebody was ready, willing, and able to relocate the vehicle. In contrast, Campbell swears Pennie never told him that.

Officer Campbell then issued Pennie a citation under 625 Ill. Comp. Stat. § 5/6-303(a).[3] Dkt. 88-2, ¶ 34. Campbell noted later in response to an interrogatory that Pennie was issued a citation under 725 ILCS 5/107-12(a), which he explained is

---

[3] The Illinois Appellate Court further referred to this as a citation. *Pennie v. City of Rockford Code Hearing Division*, 2018 IL App. (2d) 180411-U, ¶ 2.

3

considered an arrest.[4] Dkt. 97-2, ¶ 4. Though the parties dispute whether Pennie told Officer Campbell that someone was available to take the vehicle, Officer Campbell impounded the vehicle and had it towed away. Before the vehicle was towed, Officer Campbell performed an inventory, which he explains was not part of any investigation, nor did it uncover any incriminating evidence. Dkt. 88-2, ¶ 44.

The crux of this case concerns Officer Campbell's impoundment of Pennie's vehicle. Officer Campbell and the City of Rockford contend that the impoundment was authorized under state law and Rockford police procedure and that Officer Campbell had probable cause to arrest Pennie for driving on a suspended license; an offense that subjects Pennie to possible seizure and forfeiture of his vehicle. Pennie agrees that Officer Campbell had probable cause, and that state statutory law provides for the possible forfeiture of his vehicle. He argues, however, that Officer Campbell did not impound his vehicle as a forfeiture, but as a regular impoundment, subject to release on the payment of certain fines. Regardless, he

---

[4] The record is insufficient to determine whether Pennie was arrested under Illinois law, although there is no doubt he was seized for Fourth Amendment purposes. He was issued a notice to appear, but because "arrest" and "notice to appear" are not mutually exclusive, they can both be true at the same time, or not. In *People v. Bahnfleth*, the defendant argued that he was not arrested, but instead issued a notice to appear under the same Illinois statute at issue here. 599 N.E.2d 16, 19 (Ill. App. Ct. 1992). But in that case, the defendant was brought to the police station. Though the defendant was eventually given a notice to appear, the appellate court explained that a notice to appear and an arrest are not mutually exclusive and that whether a person is arrested is determined by analyzing "whether a reasonable man, innocent of any crime, would have concluded that he was not free to leave considering the surrounding circumstances." *Id.* at 18–19. Under those circumstances, in which he was taken to the police station, an arrest and a notice to appear both occurred. *Id.* at 19. Other cases have explained that an arrest can happen "by the service of a uniform citation." *People v. Mannion*, 577 N.E.2d 532, 534 (Ill. App. Ct. 1991). In this case, the parties disagree whether Officer Campbell in fact arrested Pennie. But the parties have not sufficiently argued the point and the resolution of that question is not necessary for the proper disposition of the pending motion for summary judgment.

notes that he had someone available to take the car, so that the impoundment and inventory was unreasonable under the Fourth Amendment.

## B. Legal Standard

On summary judgment, the movant has the burden of showing that "no genuine dispute as to any material fact" exists and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the suit. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). No "genuine" dispute exists if a court would be required to grant a Rule 50 motion at trial. *Id.* at 250–51. The Court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). "Summary judgment is only warranted if, after doing so, [the Court] determine[s] that no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016). "When video footage firmly settles a factual issue, there is no genuine dispute about it, and [the Court] will not indulge stories clearly contradicted by the footage." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018).

## C. Analysis

In this action, Pennie brings three claims. First, he asserts that Officer Campbell violated his rights under the Fourth Amendment. Second, he claims that Officer Campbell violated Illinois' theft statute. And third, he claims indemnification, such that the City of Rockford would be required to indemnify

5

Officer Campbell if he is found liable in this action. *See Wilson v. City of Chicago*, 120 F.3d 681 (7th Cir. 1997). As an initial matter, the Court grants summary judgment to the Defendants on Pennie's state law theft claim. Pennie asserts a claim under 720 Ill. Comp. Stat. § 5/16-1. Dkt. 59, ¶ 99. But this is Illinois' criminal theft statute. It is not a civil statute under which a private party can seek redress.

In their motion for summary judgment, the Defendants argue that impounding Pennie's vehicle—and thus the subsequent inventory of that vehicle— was reasonable under the Fourth Amendment. They further contend in the alternative that Officer Campbell is entitled to qualified immunity, thus leaving nothing for the City of Rockford to indemnify.

### 1. Fourth Amendment

Pennie challenges Officer Campbell's decision to impound his vehicle in connection with his citation for driving on a suspended license. The Defendants assert that impounding Pennie's vehicle was reasonable because (1) Officer Campbell had probable cause to believe Pennie was driving on a suspended license, an offense that subjects the vehicle to possible forfeiture; and (2) the impound was justified in furtherance of the officer's public safety and community caretaking function. In *United States v. Duguay*, the Seventh Circuit explained that impounding a vehicle "must either be supported by probable cause, or be consistent with the police role as 'caretaker' of the streets and completely unrelated to an ongoing criminal investigation." 93 F.3d 346, 352 (7th Cir. 1996). The Defendants

argue that impounding Pennie's vehicle was reasonable under both justifications and that they are entitled to judgment as a matter of law.

### a. Was the impoundment justified by probable cause?

First, the Defendants contend that the existence of probable cause that Pennie was driving on a suspended license categorically supplies the necessary reasonableness for impounding his vehicle under the first *Duguay* justification. They argue that probable existed that the vehicle was subject to forfeiture under Illinois law because Pennie was cited for driving on a suspended license. Dkt. 87, at 3–4.

"Any vessel or watercraft, vehicle, or aircraft is subject to forfeiture if the vessel or watercraft, vehicle, or aircraft is used with the knowledge and consent of the owner in the commission of . . . (7) an offense described in subsection (g) of Section 6-303 of the Illinois Vehicle Code." 720 Ill. Comp. Stat. § 5/36-1(a)(7). Subsection 6-303(g) of the Illinois Vehicle Code provides that when a person drives a vehicle on a suspended license, that vehicle is subject to seizure and forfeiture if that person's license was suspended or revoked because of a "statutory summary suspension or revocation under Section 11-501.1 of this Code or similar provision of a law on another state." 625 Ill. Comp. Stat. § 5/6-303(g)(3). Section 11-501.1 is the statute that contemplates the suspension of a driver's license in certain circumstances: "A person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit

to the test will result in the statutory suspension of the person's privilege to operate a motor vehicle." 625 Ill. Comp. Stat. § 5/11-501.1(c).

Here, Pennie was cited for driving on a suspended license in violation of 625 Ill. Comp. Stat. § 5/6-303(a). Dkt. 88-2, at 24. That violation subjected Pennie's vehicle to possible forfeiture. But the record contains no evidence that the vehicle was actually forfeited. Instead, the City argued at Pennie's administrative hearing that Officer Campbell properly impounded the vehicle under 625 Ill. Comp. Stat. § 5/4-203(e-5). *Pennie*, 2018 IL App. (2d) 180411-U, ¶ 6. That statute provides for the temporary seizure (rather than forfeiture) of a vehicle when the driver is driving on a suspended license if the officer reasonably believes the offender might again drive the vehicle on a suspended license. The same statute, however, contemplates releasing the vehicle if the owner gives permission to another individual who is capable of driving the vehicle. 625 Ill. Comp. Stat. § 5/4-203(e-5). As an alternative, the City also argued at Pennie's administrative hearing that the impoundment was proper under 625 ILCS 5/11-1302(c)(3), which permits law enforcement to remove a vehicle to the nearest garage "or place of safety" when the driver is arrested, and the officer is required by law to take the arrestee before a magistrate without unnecessary delay. *Pennie*, 2018 IL App. (2d) 180411-U, ¶ 7. (But the undisputed facts show that Officer Campbell did *not* take Pennie to a magistrate without delay. He was instead issued a notice to appear and was free to leave after being issued the notice to appear.)

The Defendants contend that it doesn't matter whether the purpose of the

8

impoundment was as a regular impoundment or as a forfeiture. In support, they cite *Scott v. United States*, 436 U.S. 128, 136 (1978) for the proposition that an officer's subjective state of mind is irrelevant to the reasonableness inquiry under the Fourth Amendment. Dkt. 101, at 2. But that case, and others like it, merely point out that the reasonableness analysis is objective, not subjective. What matters is not what the officer thought at the time but whether the officer's actions were objectively reasonable. *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011). But Pennie's argument that his car was not forfeited—and instead merely impounded—is not a subjective inquiry. It is a factual determination of what Officer Campbell actually did, not a subjective inquiry into what he thought or his motivations for doing what he actually did. The record is clear: Officer Campbell impounded Pennie's vehicle as a temporary seizure, subject to release back to Pennie on the payment of certain administrative fees. Dkt. 88-2, ¶ 28 (noting that police policy and Illinois law allows impoundment when the vehicle poses a safety hazard, and no one is available to legally operate the vehicle); Dkt. 88-2, ¶ 31 (further noting that "since the GMC was not at Mr. Pennie's home address, I concluded that impounding the GMC was also in the interest of public safety by promotes [sic] the safe and efficient use of the roadway"); *see also* Dkt. 97-2, ¶ 14 (noting that Pennie could have obtained the vehicle after paying administrative fees and charges); Dkt. 97-3, at 1 (noting that the vehicle was "eligible for release"); Dkt. 97-4 (impound report noting that no hold was placed on the vehicle). Thus, the car was not seized under the forfeiture statute,

9

even if it could have been. It was impounded for community caretaking.[5] And Pennie challenges the constitutionality of what Officer Campbell did, not what he could have done but chose not to do. Thus, the facts presented in this case do not invoke the first *Duguay* justification.

Though not argued by the parties, the Court further notes the ambiguity in *Duguay*'s instruction that probable cause can justify the impoundment of a vehicle. The first question that reasonably comes to mind is "probable cause for what?" In *Duguay*, the Seventh Circuit recognized that probable cause can form the basis of a reasonable impoundment outside of the community caretaking function. *Duguay*, 93 F.3d at 352 (stressing the need for probable cause *or* consistency with law enforcement's community caretaking function). Contrary to the Defendants' argument, however, the court did not hold that impoundments are categorically reasonable under the Fourth Amendment *every* time the officer has probable cause to arrest the vehicle's owner or to take the vehicle as a forfeiture. Indeed, the court recognized that "[u]nder Illinois law, impoundment is permissible only when the arrestee was not able to provide for immediate removal of the vehicle." *Duguay*, 93 F.3d at 353. And such a categorical rule would not comport with the Supreme

---

[5] Indeed, if the Fourth Amendment reasonableness analysis ended upon a showing that the officer *could have* seized the vehicle under a forfeiture statute, then the analysis in *Duguay* would have been unnecessary. In that case, U.S. Marshals found 533 grams of cocaine in the trunk of Duguay's car, *Duguay*, 93 F.3d at 349, which would also have subjected his vehicle to forfeiture. *Bell v. City of Chicago*, 835 F.3d 736, 740 (7th Cir. 2016). Still, even when a vehicle is subject to forfeiture, that does not per se end Fourth Amendment analysis. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 52 (1993) (explaining that the "Fourth Amendment places limits on the Government's power to seize property for purposes of forfeiture").

Court's instruction that "the Fourth Amendment places limits on the Government's power to seize property for purposes of forfeiture." *Unites States v. James Daniel Good Real Prop.*, 510 U.S. 43, 52 (1993).

And notwithstanding the possibility of forfeiture, the probable cause contemplated in *Duguay* cannot mean the probable cause to arrest a person. If that were all the officer needed to impound the car, then the Seventh Circuit would not have contemplated whether an *arrestee* was able to provide for proper removal of the car without the need for an impoundment.[6] That entire reasoning would be rendered superfluous. Furthermore, if a police officer could impound a vehicle any time a person was found driving on a suspended license (and thus subject to arrest or notice to appear)—regardless of whether another person was available to take custody of the vehicle—then impoundment of the vehicle for community caretaking would never be necessary under these circumstances. The entire body of law stemming from *Duguay*'s community caretaking justification would be unnecessary because the arresting officer would never need to invoke that justification.

And again, the probable cause contemplated in *Duguay* also cannot reasonably be read to mean categorically all situations in which probable cause exists that the vehicle is subject to a forfeiture statute. To be sure, law enforcement may seize vehicles under a forfeiture statute where probable cause exists that the vehicle is subject to that statute. In *United States v. Pace*, the Seventh Circuit explained that the "police may seize a car without a warrant pursuant to a

---

[6] To be clear, law enforcement had found a substantial quantity of crack cocaine in the trunk of Duguay's later-impounded car. *Duguay*, 93 F.3d at 349.

forfeiture statute if they have probable cause to believe that the car is subject to forfeiture." 898 F.2d 1218, 1241 (7th Cir. 1990). Probable cause under a forfeiture statute treats the vehicle "as being itself guilty of wrongdoing." *Id.* at 1242 (quoting *United States v. One Mercedes Benz 280S*, 618 F.2d 453, 454 (7th Cir. 1980)). Indeed, in *Florida v. White*, the Supreme Court held that the seizure of a vehicle under a Florida criminal forfeiture law did not violate the Fourth Amendment because "they certainly had probable cause to believe that the vehicle *itself* was contraband under Florida law." 526 U.S. 559, 565 (1999) (emphasis in original). In part, that decision was based on the "[r]ecognition of the need to seize readily movable contraband before it is spirited away." *Id.*

But that doesn't mean that the existence of a forfeiture statute ends the Fourth Amendment reasonableness analysis in all situations, even when the vehicle in question is not necessary evidence of the crime alleged.[7] As the Seventh Circuit explained in *United States v. Cartwright*, "The existence of a police policy, city ordinance, or state law alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment." 630 F.3d 610, 614 (7th Cir. 2010). Instead, the better reading of the "probable cause" justification of *Duguay* is that the impoundment is reasonable—without the need to invoke community caretaking—when the police officer has probable cause to seize

---

[7] To be clear, law enforcement may seize vehicles that are subject to a forfeiture statute without a warrant. *United States v. Pace*, 898 F.2d 1218, 1241–42 (1990). But that does not mean the Fourth Amendment does not apply to forfeiture cases. The seizure must still satisfy the Fourth Amendment's touchstone: reasonableness. *South Dakota v. Opperman*, 428 U.S. 364, 373 (1976).

the vehicle under a forfeiture statute because the vehicle *itself* is considered necessary evidence that needs to be secured under that forfeiture statute. *White*, 526 U.S. at 564-55, 566. This is in stark contrast to impoundment under the community caretaking function, which does not permit impoundment for the purpose of ongoing criminal investigation. *Caniglia v. Strom*, 141 S. Ct. 1596, 1600 (2021) (Kavanaugh, J., concurring) (explaining that "community caretaking" is not an overarching or freestanding doctrine but merely refers to "the many police tasks that go beyond criminal law enforcement"); *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) (referring to community caretaking function as "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute").

In this case, the record contains no evidence that Pennie's car was impounded as part of an ongoing investigation; that it was considered evidence of a crime. In other words, the Defendants have not pointed to any evidence that Officer Campbell impounded Pennie's vehicle on the basis that it was subject to forfeiture because the vehicle itself was considered evidence in need of preservation. Instead, the Defendants merely argue that state law permits impoundment, and so it must be reasonable under the Fourth Amendment. But state law cannot supersede a constitutional provision, and the argument the Defendants press would amount to a categorical rule that cannot exist in light of *United States v. Duguay* and *United States v. Cartwright. See Thompson v. Village of Monee*, 110 F. Supp. 3d 826, 847 (N.D. Ill. 2015). Instead, Officer Campbell impounded Pennie's car under state and

13

local rules that contemplated the community caretaking function of law enforcement.[8]

### b. Was the impoundment justified as community caretaking?

The second justification for impounding a vehicle that the Seventh Circuit contemplated in *Duguay* is when the impoundment is consistent with the officer's duty as a community caretaker. *Duguay*, 93 F.3d at 352. In that case, the Seventh Circuit explained that the "policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets." *Id.* at 353. Here, the ostensible reason for impounding Pennie's car was for community caretaking, as explained above. It was not seized as a forfeiture. Thus, the Court cannot determine whether the impoundment of Pennie's care was reasonable under the Fourth Amendment without an analysis of whether he told Officer Campbell that he had someone available to take custody of the vehicle and move it off the street. This point was further explained later by the Seventh Circuit.

In *United States v. Cartwright*, Cartwright's car was impounded after the police officer acted on probable cause and arrested him; he told the officer he didn't have a driver's license on him and then gave a name that couldn't be verified. (It

---

[8] The Defendants in reply further pointed out that the paperwork would have been same regardless of whether Officer Campbell impounded Pennie's car or seized it as a forfeiture. Dkt. 101, at 7 ("Thus, Officer Campbell would not have employed a different procedure or issued different documents to impound plaintiff's vehicle under the forfeiture statute."). But regardless of whether the same form is used, the documentation in the record clearly indicates that Pennie's vehicle was impounded subject to release and without any hold. As explained above, it was undisputedly not seized as a forfeiture.

was an alias.) 630 F.3d at 612. The court explained that impounding the vehicle was done in accordance with the police department's formal policy. Following those procedures, however, was not dispositive. Instead, the court relied on the fact that Cartwright and his passenger had no immediately available alternative means of removing the car from that location. *Id.* at 615. Critically, that determination was made after the district court had held an evidentiary hearing to settle the question of fact regarding whether someone was available to take custody of the vehicle and move it from the roadway. *Id.*

In this case, the parties dispute whether Pennie told Officer Campbell that he had someone immediately available to take custody of the vehicle. In their opening brief, the Defendants asserted that the record contained no evidence to support that allegation. That may have been true at the time of the filing. But, in response to the motion for summary judgment, Pennie supplied all the evidence he needed—an affidavit swearing that someone was in fact available to move the vehicle and that he told Campbell this. Dkt. 97-8, at 1-2. Specifically, Pennie submitted an affidavit attesting that he told Officer Campbell that someone was available to take the car, so that impounding his vehicle would not be necessary or reasonable. Dkt. 97-8, at 1–2. A genuine dispute of material fact exists preventing summary judgment.

The Court could stop there, because that dispute on its own requires that the Court deny summary judgment. But the Court further notes that the Defendants' argument also relied on the idea that the vehicle was parked illegally, in violation of a city ordinance, and that Rockford Police Department policy allowed for the

impoundment. Multiple problems torpedo that contention. First, that same police policy permits impoundment under these circumstances only when no one is available to take custody of the vehicle. Dkt. 88-2, at 17 (noting that impoundment is proper, among other options, when the "vehicle is a traffic hazard and *no responsible party can be contacted*" and when the "driver is arrested and the vehicle cannot be legally parked or "there is no one available or legally able to drive the vehicle"). Thus, that policy specifically contemplates the factual dispute at issue here. Second, the video evidence in the record establishes that Pennie's car was parked on the curb, just like the other cars in the video. The Defendants argue that Pennie's car was impeding "the free flow of two-way traffic on the relatively narrow roadway due to the presence of snow and ice." Dkt. 87, at 7. But (being generous to the Defendants) that is not undisputed either. The police dashcam video shows that snow and ice had accumulated on the ground. The video shows snow on the grass. But, contrary to the Defendants claim, the video shows that the street was clear of snow and ice. The Court strains to see how Pennie's vehicle was impeding the flow of traffic at all. A genuine issue of material fact exists as to whether Pennie's vehicle "impeded the free flow of two-way traffic." Dkt. 87, at 7. So, summary judgment cannot be entered.

### D. Qualified Immunity

Lastly, the Defendants argue that Officer Campbell is entitled to qualified immunity. If he is, then the City of Rockford would have nothing to indemnify. "The doctrine of qualified immunity shields officers from civil liability so long as their

conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). That presents two questions: whether the evidence, taken in the light most favorable to the plaintiff, supports a finding that the defendant violated the plaintiff's constitutional rights; and (2) whether that right was clearly established at the time of the alleged violation. *Day v. Wooten*, 947 F.3d 453, 460 (7th Cir. 2020). Either question may be dispositive, and so they do not have to be addressed in order. *Pearson*, 555 U.S. at 236. But, once properly raised, the plaintiff bears the burden of defeating qualified immunity. *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019).

In determining whether a right is clearly established, existing precedent may not merely suggest a rule. Instead, the "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). Although the plaintiff need not point to a case directly on point, "existing precedent must place the lawfulness of the particular arrest 'beyond debate.'" *Wesby*, 138 S. Ct. at 590. The focus in a qualified immunity analysis, "is on whether the officer had fair notice that [his] conduct was un-lawful." *Taylor*, 10 F.4th at 806 (quoting *Balsewicz v. Pawlyk*, 963 F.3d 650, 656–57 (7th Cir. 2020)).

The Defendants assert that no Supreme Court or Seventh Circuit case law existed at the time of the purported violation that would have put Officer Campbell

on notice "that it was unconstitutional to: (1) impound a vehicle subject to forfeiture under state law; or (2) impound a vehicle parked illegally, which posed a threat to public safety, when the vehicle owner did not identify a specific individual, at the scene, who was licensed to drive the vehicle." Dkt. 87, at 12. The twin decisions of *Duguay* and *Cartwright* doom the first point. And the genuine dispute of fact created by Pennie's affidavit negates the second point.

In support of their argument, the Defendants cite two recent district court cases that contemplated similar circumstances. First, they cite *Simmons v. Bloomington Police Dep't*, No. 18-1429, 2021 U.S. Dist. LEXIS 7744, at *10 (C.D. Ill. Jan. 14, 2021). In that case, the officer had probable cause to believe the plaintiff had driven his vehicle without a license, though the plaintiff adamantly protested that he did not. Nonetheless, the court determined that the existence of probable cause that the plaintiff had committed an offense that could subject his vehicle to forfeiture was per se enough to make the impoundment reasonable under the Fourth Amendment. And because no clearly established constitutional right had been violated, the defendant was entitled to qualified immunity. *Id.* at *10–11. With respect, however, this Court declines to follow that reasoning. As explained above, such a categorical rule is not consistent with *Duguay*, *Cartwright*, or the Supreme Court's admonition that "the Fourth Amendment places limits on the Government's power to seize property for purposes of forfeiture." *James Daniel Good Real Prop.*, 510 U.S. at 52. Indeed, the *Simmons* decision did not even cite *Duguay* or *Cartwright*.

The Defendants next cite to *Hardiman v. Chief of the Indianapolis Metro. Police Dep't*, No. 1:18-cv-00348, 2021 U.S. Dist. LEXIS 110814, at *17 n.12 (S.D. Ind. June 11, 2021). In *Hardiman*, the plaintiffs argued that because someone was available to move the car, law enforcement was required to allow that person to move the vehicle instead of merely impounding it. The plaintiffs argued that *Duguay* clearly established the right, so that qualified immunity did not apply. *Id.* at *13–14. In holding that qualified immunity protected law enforcement, the *Hardiman* court explained that, unlike *Duguay*, law enforcement knew that Hardiman was not the registered owner of the car and could not lawfully give anyone permission to remove it. *Id.* at *17. Based on that material difference, the *Hardiman* court held that *Duguay* was not sufficiently analogous, so that it could have clearly established a right under qualified immunity doctrine.

Here, the facts taken in the light most favorable to Pennie are more closely analogous to *Duguay* and *Cartwright*, which expanded *Duguay*. In *Duguay*, which has already been discussed at length, the Seventh Circuit further used broad language to explain that, under Illinois law, impoundment is only permissible when the arrestee cannot provide for immediate removal of the vehicle. And under the Fourth Amendment, impounding a car without regard for a person's ability to safely remove it to avoid impoundment is patently unreasonable if the "ostensible purpose" was community caretaking. *Id.* at *18–20. But that court also found important the fact that the police department had not promulgated written rules governing the impoundment of vehicles. *Id.* at *15. Thus, *Duguay* left open for

19

debate the question of whether impoundment was reasonable under the Fourth Amendment when an officer followed police department policies and procedures.

*Cartwright* answered the question left unresolved by *Duguay*. In that case, Cartwright was pulled over by an Indianapolis police officer, he failed to produce a driver's license and gave a false name. *Cartwright*, 630 F.3d at 612. Following police policy and procedure, the officer arrested Cartwright and had the car towed. The passenger did not have a driver's license. *Id.* The passenger asked the officers if she could find someone else to move the vehicle, as she couldn't afford the fees to get the car out of impound. They refused. *Id.* at 613. Though the police officer followed policy and procedure, the *Cartwright* court found that fact alone was not dispositive of the Fourth Amendment analysis. *Id.* at 614. "The existence of a police policy, city ordinance, or state law alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment." *Id.* In so holding, the Seventh Circuit cited the Supreme Court's decision in *Sibron v. New York*, in which the Court held, "The question in this Court upon review of a state-approved search and seizure is not whether the search (or seizure) was authorized by state law. The question is whether the search was reasonable under the Fourth Amendment." 392 U.S. 40, 61 (1968).

The *Cartwright* court then noted that the decision to impound Cartwright's car not only adhered to police policy but critically it was also reasonable under the circumstances. The key fact in that case, however, was that no licensed driver was

present on scene at the time to speedily and efficiently remove the vehicle.
*Cartwright*, 630 F.3d at 615.

Taken together, these cases clearly establish that merely following state
statute and police rules regarding impoundment of vehicles does not per se end the
Fourth Amendment analysis. Instead, the decision to impound must still be
reasonable under the circumstances. That includes the right to safely and efficiently
remove the vehicle from the roadway, if a licensed driver is present on the scene
that the owner of the vehicle can give permission to—though law enforcement
clearly does not have to sit around waiting for someone to materialize. *Id.* at 615
("At the evidentiary hearing, [the passenger] testified that she called 'someone' to
come and pick up the car, but she never identified that person or stated how long it
would have taken him/her to get there."). In 2015, Judge St. Eve summed up the
law neatly: "[T]he case law provides for reasonable seizure (impound) of a vehicle,
absent probable cause, in cases where the vehicle was left in a parking lot or parked
illegally or no one else could legally take the vehicle to a safer location." *Thompson*,
110 F. Supp. 3d at 848.

Thus, if Pennie had a licensed individual available at that moment to take
custody of the vehicle and safely remove it, *Duguay* and *Cartwright* together clearly
establish his right to avoid impoundment. That, however, is a genuine dispute of
material fact. As explained above, Pennie submitted a proper declaration that he
told Officer Campbell that someone was available to take the car—not that she
could be called, but that she was on scene. According to Pennie, she was apparently

21

in eyeshot, standing in her front yard directly across the street. That presents a genuine dispute of material fact for the jury. But for the purposes of qualified immunity, the Court must accept Pennie's version of the facts as true. Doing that, Officer Campbell was not qualifiedly immune.

### E. Conclusion

Thus, the Court grants summary judgment to Defendants on Pennie's state-law theft claim. But the Defendants' motion for summary judgment on Pennie's unlawful seizure claim is denied. In denying the motion, however, the Court is not stating an opinion on the merits of the case. Rather, the Court merely holds that genuine disputes of material fact exist, and so summary judgment is not appropriate. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). This case is referred to Magistrate Judge Schneider to discuss whether a settlement conference would be a useful exercise. If settlement is unlikely, then the parties can begin preparing the Final Pretrial Order.

Date:  February 3, 2022

Honorable Iain D. Johnston
United States District Judge